Gordon L. Osaka, OSB #75287
Kelly A. Fisher, OSB #065878
1000 SW Broadway, Suite 940
Portland, OR 97205
Telephone: (503) 241-8005
Fax: (503) 226-6276
Email: glosaka@ipns.com
       kfisher@ipns.com
       Attorneys for Plaintiff

FILED14 OCT '11 14:59USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

RETAIL IMAGING MANAGEMENT GROUP,
LLC, an Oregon Limited Liability
Company,

        Plaintiff,

    v.

FUJIFILM NORTH AMERICA
CORPORATION, a New York
Corporation

        Defendant.

Plaintiff alleges:

CV 11 - 1242    SI
Case No.

COMPLAINT
Antitrust (15 U.S.C. §2);
Negligence;
Intentional Interference with
Economic Relations

DEMAND FOR JURY TRIAL

## INTRODUCTION

1. Plaintiff shall hereinafter be referred to as RIMG. Defendant shall hereinafter be referred to as FUJI.

2. FUJI manufactures photofinishing equipment, including minilabs, for example, FUJI's dry-lab DL-400 series systems. The FUJI DL-400 series systems are located at, inter alia, retail outlets throughout the nation, such as Sam's Club and

PAGE 1 - COMPLAINT

#43310

Walmart.   These retail outlets shall hereinafter be referred to as "end users."

3.   FUJI minilabs account for at least 70% of minilab sales to end users throughout the nation.

4.   FUJI's minilabs are distinctive; for example, FUJI minilab parts and software are not interchangeable with parts and software used in other manufacturers' photofinishing equipment.

5.   FUJI sells replacement parts for its minilabs.   FUJI produces some of the parts itself and utilizes designated suppliers to make other parts exclusively for sale and distribution by Fuji.

6.   FUJI's sales of FUJI minilab parts account for at least 70% of the FUJI minilab parts market throughout the nation.

7.   FUJI also offers in-store service maintenance of its minilabs for end users.

8.   Beginning in about 2001, RIMG began servicing FUJI minilabs for end users throughout the nation.   Therefore, FUJI and RIMG became direct competitors for the service of FUJI minilabs.

9.   RIMG is the only independent service agent for FUJI minilabs in the nation.

10.   FUJI's servicing of FUJI minilabs accounts for at least 70% of the FUJI minilab service market throughout the nation.   FUJI outsources its end user service needs to its exclusive,

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

designated third party service agent Customer Engineering Service, LLC (CES).

11. As RIMG grew more competitive in the FUJI minilab service market, FUJI began a concerted effort to restrict RIMG's ready access to certain critical FUJI minilab parts, reports, service and maintenance bulletins, software, technical training, and tools essential to servicing FUJI minilabs (collectively, hereinafter referred to as "resources").

12. FUJI's resources restrictions limit RIMG's ability to compete in the service market of FUJI minilabs.

13. Competition in the FUJI minilab service market requires that service providers, like RIMG, have ready access to all resources.

14. FUJI excludes competition in violation of Section 2 of the Sherman Act in one or more of the following particulars: (a) Monopolizing the FUJI minilab parts and/or service markets; (b) Attempting to monopolize the FUJI minilab parts and/or service markets.

15. As it relates to Sherman Act violations, this lawsuit seeks monetary damages of not less than $25,000,000.00, which, when trebled pursuant to law, totals not less than $75,000,000.00, and equitable injunctive relief. Monetary damages shall be updated as need be.

/ / /

PAGE 3 - COMPLAINT

## JURISDICTION AND VENUE

16.  This court has jurisdiction over the federal antitrust claims in this action pursuant to 15 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1337. Venue in this district is proper under 15 U.S.C. § 22 and 28 U.S.C. § 1391, as the defendant is found, transacts business, and maintains an agent in this district.

## RIMG

17.  RIMG is a limited liability company, organized and existing under the laws of the State of Oregon since June 2000, with its principal offices located in Portland, Oregon.

18.  RIMG's core competency includes servicing all FUJI minilabs, including FUJI's DL-400 series systems, for end users throughout the nation.

## FUJI

19.  FUJI is a New York-based multinational corporation and the nation's largest manufacturer of minilabs, including its DL-400 series systems. As alleged above, FUJI minilabs account for at least 70% of minilab sales to end users throughout the nation.

20.  FUJI's sale of FUJI minilab parts accounts for at least 70% of the FUJI minilab parts market throughout the nation, for which there are no reasonable substitutes.

PAGE 4 – COMPLAINT

21.  FUJI's servicing of FUJI minilabs accounts for at least 70% of the FUJI minilab service market throughout the nation, which FUJI outsources as alleged above to its third party service agent.  FUJI and RIMG are direct competitors in servicing of FUJI minilabs.

THE INITIAL YEARS – A COLLABORATIVE MUTUALLY REWARDING EFFORT

22.  Beginning in about 2001, RIMG was instrumental in helping FUJI secure lucrative minilab, other photofinishing equipment, wholesale photofinishing, photofinishing paper, and chemical sales contracts with end users under contract to RIMG for service.  Paper and chemicals are often called "consumables." These end users previously used Noritsu photofinishing equipment.

23.  After the end users converted to FUJI minilabs, photofinishing paper, and chemicals, RIMG would then provide the service on FUJI minilabs for the end users.

24.  During the collaborative period, FUJI provided RIMG ready access to FUJI minilab parts, including technical documentation and training (service information).  Additionally, per a written Services Agreement, FUJI granted RIMG a 25% discount on FUJI parts and a 10% discount on FUJI labor.  RIMG would purchase FUJI minilab parts and labor from FUJI on an as needed basis. FUJI maintained the sale of equipment and consumables with these

PAGE 5 – COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

joint end user customers and RIMG performed the service on said equipment.

25. Under the written Services Agreement, FUJI also provided RIMG with ready access to and use of FUJI's reports, service and maintenance bulletins, software, technical training, and tools essential to servicing FUJI minilabs.

26. For those RIMG end users that continued to use Noritsu photofinishing equipment, Noritsu granted RIMG a 15% discount on Noritsu parts and labor.

GOLIATH SET HIS SIGHTS ON DAVID

27. Several events motivated the change in FUJI's collaborative relationship with RIMG, which culminated in FUJI's current systematic intent to control the sale of FUJI minilab parts and service and to destroy RIMG as a service competitor for all FUJI minilab equipment:

A. CUSTOMER ENGINEERING SERVICES, LLC (CES). In approximately 2006, FUJI acquired an approximate 30% ownership interest in CES, a company organized and existing under the laws of Colorado. Prior to 2006, CES was not an RIMG competitor for servicing of FUJI minilabs. Contemporaneously with this acquisition, FUJI terminated all field service personnel, who were then re-hired by CES. Thereafter, FUJI outsourced its end user minilab service agreements to CES, with FUJI

PAGE 6 – COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

continuing to invoice its end users for the service, and said invoices continuing to be payable to FUJI.

B. FUJI/NORITSU - THE GLOBAL ALLIANCE.   Prior to approximately March 2006, FUJI and Noritsu were competitors in the photofinishing equipment industry, each manufacturing its own unique photofinishing equipment for end users throughout the nation.   On or about March 2006, FUJI and Noritsu formed a global alliance in the field of photofinishing whereby, inter alia, FUJI and Noritsu jointly developed digital minilabs, related products, and after-sales services.   Noritsu then began manufacturing the core of FUJI's minilabs for FUJI, to be branded under the FUJI label.   This global alliance gave FUJI and Noritsu over 90% share of the end user digital photofinishing equipment market in the nation.   This global alliance limited end users' independent choices for the purchase of minilabs. FUJI expanded its end user minilab market share by selling FUJI branded products at substantial discounts. The net effect allowed FUJI to control the end user minilab market.

C. SAM'S CLUB.   By December 2009, FUJI knew that Sam's Club, a subsidiary of Walmart, was disenchanted with FUJI's minilab service and was seriously considering moving this service to RIMG, which offered superior service at a lower price.   Not coincidentally, on December 23, 2009, FUJI sent a letter to

PAGE 7 - COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR 97205
503. 241. 8005

RIMG announcing that significant (20%-39%) parts and labor price increases were forthcoming. Other large customers of FUJI, including Walmart, Sam's Club, Walgreens, Costco, AAA Imaging, and FUJI's third party service agent CES did not receive any letters referencing any such price increase. Beginning in April 2010, Sam's Club moved the majority of its minilab field service to RIMG.

### FIRST CLAIM FOR RELIEF

(FUJI'S MONOPOLY OF FUJI MINILAB PARTS AND SERVICE MARKETS)

28. MONOPOLY POWER. FUJI possesses monopoly power in the FUJI minilab parts and service markets. RIMG re-alleges paragraphs 2-13, 17-18, and 19-27.

29. FUJI WILLFULLY ACQUIRED OR MAINTAINED THAT POWER. FUJI's hereinafter alleged exclusionary anticompetitive conduct was and is intended to acquire or maintain monopoly power in the FUJI minilab parts and/or service markets:

A. CUSTOMER ENGINEERING SERVICES, LLC (CES). When FUJI acquired the above referenced CES ownership interest, FUJI and CES began a systematic effort to eliminate RIMG's access to reasonably priced parts, software critical to the service of FUJI minilabs, service information (including technical documentation and training), and tools that are required to service said equipment. FUJI had previously provided ready

PAGE 8 - COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR 97205
503. 241. 8005

access to these resources, which are a prerequisite for providing minilab service.

B. FUJI/NORITSU – THE GLOBAL ALLIANCE. As part of the above referenced global alliance, FUJI and Noritsu agreed to simultaneously increase their respective parts and labor prices to RIMG, and to restrict ready access to the resources RIMG needed to successfully fulfill its service responsibilities to its end users.

C. FUJI DISCOUNTS ELIMINATED. On or about August 1, 2007, FUJI eliminated its minilab parts and labor discounts to RIMG, FUJI's pretextual justification being that the discounts were eliminated across the board with all customers, when in fact FUJI did not eliminate discounts for other customers of similar RIMG purchasing volume.

D. NORITSU DSCOUNTS ELIMINATED. Not coincidentally, on or about August 1, 2007, Noritsu also eliminated its 15% parts and labor discounts to RIMG, Noritsu's pretextual justification being that RIMG's purchasing volume was decreasing, when in fact RIMG's volume with Noritsu was ten (10) times the previous year and higher than at any time since RIMG began doing business with Noritsu.

E. FUJI'S SLEIGHT OF HAND. Toward the end of 2008, unbeknownst to RIMG and even though their written Services Agreement required mutual agreement for price increases, FUJI

PAGE 9 – COMPLAINT

unilaterally increased its parts and labor prices to RIMG by approximately 10% on average.  RIMG was not even aware of the over-charge, despite numerous futile written requests to FUJI by RIMG for a written price list.  The over-charge was only discovered after 6 months of over-charges by comparing new invoices to invoices from the previous year, at which point FUJI acknowledged the sleight of hand and credited RIMG for the over-charge.

F. SERVICE AGREEMENT ELIMINATED.  On or about May 2010, FUJI refused to negotiate an extension of its Services Agreement with RIMG.

G. ANOTHER PRICE INCREASE.  On or about May 2010, FUJI unilaterally increased its minilab parts and labor prices to RIMG, FUJI's pretextual justification being increased costs. Yet, FUJI did not increase its parts and labor prices to end user customers who had executed full service and support agreements with FUJI for bundled services, including parts, service labor, and consumables, or other FUJI end users who purchased FUJI parts and labor on an as needed basis, including such retailers as Walgreens and Costco.  Applying the total bundled discounts to parts and service, FUJI is selling parts and service to these end users below its incremental cost, in order to exclude RIMG as a competitor in the service market; alternatively, FUJI is charging RIMG

PAGE 10 – COMPLAINT

GORDON L OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

higher prices for such parts and service in order to exclude RIMG as a competitor in the service market.

H. DL SERIES MINILABS. FUJI'S DL-400 series ink jet minilab system is defectively designed in such a way that the print head assembly must be replaced at approximately every 600,000 prints. FUJI mandates that only its outsourced service agent, CES, diagnose the print head failure, that only these agents have access to the proprietary alignment tool "jig" that is necessary to install the replacement print head, and that only these CES agents can be trained by FUJI technicians on how to install the print head. The net effect is that RIMG must outsource the entire print head replacement process to FUJI/CES at an average cost of $15,000 to $17,000 per event (parts and labor). RIMG estimates its annual print head replacement costs (parts and labor) to exceed $3,000,000 per year just in support of RIMG contracted end user Sam's Club alone. The cost of replacing the print head is more than 75% of what many end users, like Sam's Club, paid for the entire system when purchased new. RIMG's Service Agreement with its customers is "parts inclusive," in that all repairs and service labor are included in a fixed monthly fee to the end user. Fuji offers its end user customers the very same type of "parts inclusive" program. Therefore, RIMG, as a service provider, is paying FUJI nearly 75% of the price that the DL-

PAGE 11 - COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

400 series systems were initially sold for to the end user. After three years, RIMG will have paid for the equivalent of two new DL-400 series systems per Sam's Club location based on the current rate for print head failures and the cost to have FUJI replace the print heads. In those situations where FUJI's outsourced service agent CES is the service provider to the end user, FUJI does not pass the repair parts and service labor costs on to the retailer end user; therefore, FUJI and its designated third party service agent enjoy a service cost advantage on the DL-400 series systems that effectively eliminates RIMG as a competitor. Since there are no other market sources for these parts and the "jig" tool to install them, RIMG is forced to rely on FUJI. FUJI is using the alleged expense of DL-400 series print heads to justify discriminatory behavior including pricing and the withholding of critical tools and training with the sole purpose of destroying service competition and thereby virtually assuring that the business will go to FUJI/CES.

I. FUJI LIMITED RIMG'S ACCESS TO OTHER SOURCES OF FUJI MINILAB PARTS. A potentially good source for FUJI minilab parts is through the purchase of used FUJI minilabs on the open market. FUJI knows that RIMG anticipated obtaining a significant percentage of needed parts through the purchase of used FUJI minilabs. Armed with that knowledge, FUJI has

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

virtually eliminated this used parts market by contractually prohibiting its minilab end user customers and parts re-sellers from selling used FUJI minilabs to anyone but FUJI. For example, Sam's Club was negotiating to give the exclusive right to buy used FUJI minilabs that were being retired to RIMG, however, FUJI went to Walmart, Sam's Club's parent company, and convinced it, by threatening price increases and removal of discounts, to not allow Sam's Club to sell minilabs to RIMG in spite of the fact that RIMG was willing to pay more for them than FUJI. It did this by bundling in a world-wide sales agreement the return of retired equipment into the price of new equipment with Walmart, thereby guaranteeing that it would have exclusive control over all minilab parts and could therefore control pricing. RIMG intended to use the harvested parts from retired Fuji labs at Sam's Club to help hold down parts costs.

J. FUJI AND OEMS' AGREEMENT. FUJI and its OEMs agreed that the OEMs would not sell parts that fit FUJI minilabs to anyone other than FUJI.

K. ALL IN THE FAMILY. FUJI adopted a policy requiring its OEMs and national chain minilab end user customers like Walmart not to sell parts to independent service organizations like RIMG.

PAGE 13 - COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

L. RITE AID.    October 2011 was the contract expiration year between FUJI and Rite Aid for equipment, consumables, parts, and service.    In order for Rite Aid to receive its full discounts from FUJI for a new contract term, beginning October 15, 2011, FUJI influenced Rite Aid to include its bench repair work on its FUJI ASK 2000 and 4000 printers by offering substantial additional credits on future equipment purchases, even though the net effect was that FUJI would be doing said bench repair work far below its incremental cost. As the low cost provider in said bench repair work, this work was previously done by RIMG.    In the context of gross sales, this bench repair work is inconsequential by FUJI's standards, but by RIMG's standards, represents a significant percentage of RIMG's gross annual sales.

30.    BARRIERS TO FAIR COMPETITION.    Significant barriers to fair competition exist in one or more of the following particulars:

A. When FUJI acquired its interest in CES, FUJI and CES agreed not to share FUJI minilab tools, service information (including technical documentation and training), knowledge, and resources with RIMG, where, before, FUJI had previously provided such ready access to RIMG.    This restrictive agreement limits service competitors' ability to fairly compete in the parts and service market;

PAGE 14 – COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

B. As part of the global alliance, FUJI and Noritsu agreed to simultaneously increase parts and labor prices to RIMG in a direct attempt to eliminate RIMG service to end users. This restrictive agreement limits service competitors' ability to fairly compete in the parts and service market;

C. FUJI's policy of limiting RIMG access to critical software, service and technical bulletins, "jig" tools necessary to service FUJI equipment, and new product training was done to eliminate RIMG as a viable alternative to CES for FUJI equipment service, and limits RIMG's ability to fairly compete in the parts and service market;

D. FUJI's decision to eliminate its minilab parts and labor discounts was also done to reduce RIMG's ability to fairly compete in the parts and service market;

E. FUJI's decision to go directly to RIMG service customers and offer deeper discounts limits service competitors' ability to fairly compete in the parts and service market;

F. Noritsu's collective decision with FUJI to eliminate its parts and labor discounts to RIMG limits service competitors' ability to fairly compete in the parts and service market;

G. FUJI's policy not to disclose its parts and labor prices in writing to RIMG limits service competitors' ability to fairly compete in the parts and service market;

PAGE 15 - COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

H. FUJI's refusal to negotiate an extension of it Services Agreement with RIMG limits service competitors' ability to fairly compete in the parts and service market;

I. FUJI's decision to raise parts and labor prices to RIMG and not raise said prices to FUJI end user customers utilizing FUJI/CES for service limits service competitors' ability to fairly compete in the parts and service market;

J. FUJI's policy of selling bundled products, consumable supplies, and services to end user customers precludes any service agent, including RIMG, from having a chance to compete for the service segment of the business. Bundled discounts associated with the much larger equipment and consumable supplies part of the business are used to, in effect, reduce service fees below FUJI/CES's incremental cost; or alternatively, FUJI's policy of charging RIMG higher prices for such parts and labor to exclude RIMG from the service market, limits service competitors' ability to fairly compete in the parts and service market;

K. FUJI'S policy of restricting the defective print head diagnosis, replacement and "jig" tool from RIMG limits service competitors' ability to fairly compete in the parts and service market;

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

L. FUJI's agreement to eliminate the used parts market as set forth in paragraph 29K limits service competitors' ability to fairly compete in the parts and service market;

M. FUJI's contractually prohibiting its minilab end user customers to only re-sell to FUJI used FUJI equipment being retired, as a part of a bundled agreement for equipment, consumable supplies, and service, is directly intended to limit the ability of service competitors, like RIMG, to fairly compete in the parts and service market;

N. FUJI and its OEMs' agreement that the OEMs would not sell parts that fit FUJI minilabs to anyone other than FUJI limits service competitors' ability to fairly compete in the parts and service market;

O. FUJI's defective print head assembly referenced in paragraph 29H above limits service competitors' ability to fairly compete in the parts and service market;

P. FUJI's huge expenditure of money to ensure that all service solutions are proprietary, limits service competitors' ability to fairly compete in the parts and service market.

31.  INJURY.  As a result of FUJI's exclusionary and anticompetitive conduct alleged above, RIMG has suffered damages of not less than $25,000,000.00 which amount shall be updated prior to trial, if need be.

PAGE 17 – COMPLAINT

32.   EQUITABLE RELIEF.   As a result of FUJI's exclusionary and anticompetitive conduct alleged above and as an Authorized Service Agent of the end user, RIMG acts on behalf of the end user and, therefore, RIMG requests that this Honorable Court permanently enjoin FUJI, requiring FUJI to grant to RIMG the same ready access to all FUJI minilab parts, service information (including technical documentation and training), reports, bulletins, software, and "jig" tool essential to servicing FUJI minilabs in a timely manner and all at reasonable market prices, all as the end user receives from FUJI.

33.   ATTORNEYS FEES.   Per 15 U.S.C. § 15(a), RIMG is entitled to its reasonable attorneys fees incurred herein.

### SECOND CLAIM FOR RELIEF

#### (FUJI'S ATTEMPT TO MONOPOLIZE FUJI MINILAB PARTS AND SERVICE MARKETS IN ORDER TO DESTROY COMPETITION)

34.   INTENT.   FUJI's above alleged exclusionary anticompetitive conduct was and is intended to control prices in the FUJI minilab parts market, the service market, and/or destroy competition.

35.   EXCLUSIONARY OR ANTICOMPETITIVE CONDUCT DIRECTED AT ACCOMPLISHING THAT PURPOSE.   The above exclusionary anticompetitive conduct by FUJI was and is directed at accomplishing control of the FUJI minilab parts market, the

PAGE 18 - COMPLAINT

service market, and/or the destruction of competition.  RIMG re-alleges paragraph 29.

36. DANGEROUS PROBABILITY OF ACHIEVING MONOPOLY POWER.  As alleged above, as a result of FUJI's minilab sales accounting for at least 70% of minilab sales to end users throughout the nation, FUJI's sale of FUJI minilab parts accounting for at least 70% of the FUJI minilab parts market throughout the nation, and FUJI's minilab service accounting for at least 70% of the FUJI minilab service market throughout the nation, a dangerous probability exists that FUJI will be the only surviving FUJI service agent in the marketplace, and therefore be able to control minilab parts and service pricing and exclude service competition.

If FUJI's exclusionary and anticompetitive conduct is allowed to continue, the result will include RIMG's business failure within 18 months, thereby eliminating FUJI's only remaining independent service competitor.

Other independent service competitors have already had to withdraw from the service market due to FUJI's exclusionary and anticompetitive conduct.

Without service competition, FUJI will control pricing for all FUJI minilab servicing and parts.

If FUJI's exclusionary and anticompetitive conduct is allowed to continue, FUJI's minilab end users will begin to

PAGE 19 – COMPLAINT

experience supracompetitive high service prices because the end users are "locked in" to FUJI equipment due to the prohibitively high cost associated with a fleet change to a different manufacturer relative to any increase in FUJI's service prices.

37. BARRIERS TO COMPETITION. RIMG re-alleges paragraph 30.

38. INJURY. RIMG re-alleges paragraph 31.

39. EQUITABLE RELIEF. RIMG re-alleges paragraph 32.

40. ATTORNEYS FEES. RIMG re-alleges paragraph 33.

SUPPLEMENTAL STATE CLAIMS

THIRD CLAIM FOR RELIEF

(NEGLIGENCE)

41. This Honorable Court has supplemental jurisdiction over RIMG's supplemental state claims pursuant to 28 U.S.C. § 1367.

42. For the sake of expedience, RIMG re-alleges paragraphs 1-13, 17-27, and 29H.

43. On or about February 2008, FUJI launched its dry-lab DL-400 series systems to end users throughout the nation.

44. FUJI's DL-400 series system mated an Epson printer head with FUJI ink.

45. Soon thereafter, customers of RIMG began using FUJI's DL-400 series systems.

46. Beginning on or about April 2010, end user customers of RIMG began to experience the failure of the print head, thereby

PAGE 20 - COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR  97205
503. 241. 8005



requiring RIMG to repair the same pursuant to service contracts and at a $15,000.00-$17,000.00 cost on average to RIMG.

47.  These print head failures continue to date and, to date, RIMG has been required to repair the same pursuant to service contracts at a $15,000.00-$17,000.00 cost on average with RIMG's total Accounts Payable to FUJI for this product failure standing at over $500,000.

48.  The print head failures occurred because of FUJI's negligence in one or more of the following particulars:

A. Mating the Epson print head and FUJI reformulated ink when FUJI knew, or should have known, that the print head and FUJI reformulated ink were not compatible;

B. Failing to conduct reasonable testing on the Epson print head with the FUJI reformulated ink before launching the DL-400 series systems when FUJI knew, or should have known, that the FUJI reformulated ink was not compatible with the print head;

C. Failing to warn service organizations such as RIMG that the print head and FUJI reformulated ink were incompatible;

D. Failing to fix the problem within a reasonable period of time after FUJI knew or should have known of the problem.

49.  As a proximate result of FUJI's negligence, RIMG has suffered monetary damages in excess of $500,000.00 to date, representing its out of pocket and disputed costs to repair the print heads to date.

PAGE 21 - COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

50.  As a further proximate result of FUJI's negligence, RIMG will suffer future print head repair costs approximating $3,000,000.00 based on the current print head failure rate.

FOURTH CLAIM FOR RELIEF

(INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS)

51.  For the sake of expediency, RIMG re-alleges paragraphs 41 and 42, above.

52.  As alleged above, October 2011 was the contract expiration year between FUJI and Rite Aid for equipment, consumables, parts, and service.  In order for Rite Aid to receive its full discounts from FUJI for a new contract term, beginning October 15, 2011, FUJI influenced Rite Aid to include its bench repair work on its FUJI ASK 2000 and 4000 printers, even though FUJI would be doing said bench repair work below its incremental cost.

53.  As alleged above, as the low cost producer in said bench repair work, Rite Aid's bench repair work was historically done by RIMG.

54.  FUJI intentionally interfered with RIMG's bench repair work relationship with Rite Aid.

55.  FUJI accomplished said interference through improper means or for an improper purpose in violating federal antitrust laws as alleged above.

PAGE 22 - COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR 97205
503. 241. 8005

56. As a proximate result of FUJI's wrongful interference, RIMG has lost Rite Aid's bench work repair work and is now forced to close its bench work repair operations.

57. As a further proximate result of FUJI's wrongful interference, RIMG has and will sustain monetary damages approximating $3,000,000.00 over the next three years.

58. FUJI's wrongful interference was intentional, willful, and malicious, for which exemplary damages should be awarded in an amount equal to one percent (1%) of FUJI's 2010 gross sales (which is estimated to be $750,000,000.00), or, $7,500,000.00.

## JURY TRIAL

59. RIMG requests a jury trial.

WHEREFORE, RIMG prays for judgment on its claims against FUJI as follows:

1. Based on its First and Second Claims for Relief, for not less than $25,000,000.00, trebled to not less than $75,000,000.00, the equitable relief as alleged above or as this Honorable Court deems just and equitable, and for its reasonable attorneys fees and costs incurred herein;

2. Based on its Third Claim for Relief, for an amount not less than $3,500,000.00 and for its costs and disbursements incurred herein;

3. Based on its Fourth Claim for Relief, for an amount not less than $3,000,000.00 compensatory damages, and 1% of

PAGE 23 - COMPLAINT

GORDON L. OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005

FUJI's 2010 gross sales, or $7,500,000.00, as exemplary damages, and for its costs and disbursements incurred herein.

DATED this 14th day of October 2011.

RESPECTFULLY SUBMITTED,

GORDON L. OSAKA, OSB NO. 75287

KELLY A. FISHER, OSB NO. 065878

Gordon L. Osaka
Attorney at Law, P.C.
1000 SW Broadway, Suite 940
Portland, OR 97205
Attorneys for Plaintiff

PAGE 24 - COMPLAINT

GORDON L OSAKA
ATTORNEY AT LAW, P.C.
1000 S.W. BROADWAY, SUITE 940
PORTLAND, OR. 97205
503. 241. 8005